IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–01844–EWN–KLM
*(Consolidated with 07-cv-02248-LTB-KLM)*


WENDY WILSON, as an individual and as the next
of kin and personal representative of Ryan Wilson,
deceased, and
JACK WILSON, individually and as Personal
Representative of Estate of Ryan Michael Wilson,

      Plaintiffs,

v.

CITY OF LAFAYETTE,
LAFAYETTE POLICE OFFICER JOHN HARRIS,
LAFAYETTE POLICE CHIEF PAUL SCHULTZ,
JOHN DOES 1-5, and
TASER INTERNATIONAL, INC.,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is a civil rights and state tort case. Plaintiff Jack Wilson ("Plaintiff"), personally

and on behalf of the estate of his son Ryan Wilson, asserts eight claims for relief against various

defendants in connection with the killing of Ryan Wilson by City of Lafayette police officer

John Harris. Plaintiff asserts five claims against the moving party in this matter, the City of

Lafayette ("Defendant City"). This matter is presently before the court on "Defendant's Motion

to Dismiss," filed November 5, 2007. The court's jurisdiction in this matter is premised upon 28 U.S.C. §§ 1331 and 1367.

## FACTS

### 1.    Factual Background

The following facts are taken from Plaintiff's complaint and presumed to be true for purposes of this order. On the evening of August 4, 2006, detectives with the Boulder County Drug Task Force ("Boulder Task Force") were conducting surveillance of an open field in the area near 95th Street and Paschal Drive in Louisville, Colorado, where an unknown party had been illegally growing a small number of marijuana plants. (*See* Verified Notice of Removal, Ex. A-1 ¶ 12 [J. Wilson's Compl.] [filed Oct. 24, 2007].) At approximately seven o'clock that night — some thirty minutes after calling off their stakeout — Boulder Task Force detectives Vesco and Kurtz spotted an individual, later identified as twenty-two-year-old Ryan Wilson, near the marijuana plants they had been surveilling. (*Id.* ¶¶ 13–14.) The detectives, dressed in plainclothes, approached Ryan Wilson at which point he fled from the scene on foot. (*Id.* ¶¶ 14–15.) The detectives pursued him intending to arrest him for possessing and cultivating the marijuana. (*Id.* ¶ 16.)

Although slight in build at 6 feet, 4 inches tall and 140 pounds, Ryan Wilson was unable to evade capture by the Boulder Task Force detectives. (*See id.* ¶¶ 17, 56.) The detectives sent out a request for assistance in apprehending him to local municipal police departments. (*Id.* ¶ 17.) Officers from the City of Lafayette Police Department, including Officer John Harris responded. (*Id.* ¶¶ 19, 21.) Upon arriving in his unmarked police vehicle with emergency lights

flashing, Officer Harris observed Ryan Wilson running toward him. (*Id.* ¶¶ 21, 24, 26.) The panicked young man ran past Officer Harris without stopping. (*See id.* ¶ 26.) Officer Harris began pursuing Ryan Wilson and unsuccessfully called for him to stop. (*See id.* ¶ 27.)

At one point during the pursuit, Ryan Wilson, apparently exhausted from the chase, slowed as he approached a low fence. (*See id.* ¶¶ 26, 41.) At this point, Officer Harris, without prior warning, shot Ryan Wilson in the back with an Electro-Muscular Disruption Technology (EMDT) device, also known as a "Taser." (*See id.* ¶¶ 27, 29.) The device discharged approximately 50,000 volts of electricity into Ryan Wilson's body. (*Id.* ¶ 30.) Officer Harris continued to deploy the device beyond its preset cycle; after six seconds of delivering an intense electric shock to Ryan Wilson, Officer Harris finally released the trigger. (*Id.*) However, it was too late. Ryan Wilson collapsed to the ground and remained unresponsive. (*Id.* ¶ 31.) He was transported to a local hospital where he was pronounced dead from cardiac arrhythmia caused by the Taser. (*See id.* ¶¶ 31, 38.)

Ryan Wilson was an otherwise healthy individual with no history of heart problems. (*Id.* ¶ 39.) At the time when Officer Harris shot Ryan Wilson with the Taser, the young man had been running at or near top-speed for approximately five minutes over an estimated distance of one half-mile. (*Id.* ¶ 40.) Ryan Wilson was unarmed and posed no physical threat to any police officer or member of the public during the entire episode. (*Id.* ¶ 28.) By the time Officer Harris caught up with Ryan Wilson, he could have apprehended the young man with minimal or no force. (*See id.* ¶ 41.) Officer Harris received no information about Ryan Wilson's alleged crimes or other bases for his arrest prior to pursuing or seizing him. (*Id.* ¶ 18.)

Officer Harris's vehicle was equipped with sound and video recording devices that automatically turned on when the emergency lights were engaged. (*Id.* ¶¶ 22–24.) Despite the fact that the vehicle's lights were engaged at the time of Officer Harris's pursuit of Ryan Wilson and the fact that the equipment was in working order prior to and directly following the incident, the Lafayette Police Department claims any recordings from that time are missing. (*Id.* ¶¶ 32–35.) This has led Plaintiff to surmise that either Officer Harris purposefully turned off the recording equipment during the pursuit or that the recordings were destroyed to conceal Officer Harris's behavior. (*Id.* ¶ 37.)

The Lafayette Police Department has written policies regarding the use of Tasers by officers. For example, its Use of Force Policy states: "The EMDT tool/device shall not be used against a subject who is passively resisting i.e. failure of a subject to comply with verbal orders of a police officer(s). EMDT deployment/activation is only authorized at the active aggression level." (*Id.* ¶ 45.) Furthermore, the policy also prohibits the use of the Taser "[a]gainst any person simply because they are fleeing from the police, unless the use of the EMDT tool/device is otherwise authorized." (*Id.* ¶ 48 [alteration in original].) Finally, the Use of Force Policy forbids "the use of an EMDT tool/device when the result of such use 'will substantially endanger the subject.'" (*Id.* ¶ 51.)

Plaintiff asserts that Defendant City's policies regarding the use of Tasers are unclear, contradictory, and unreasonably dangerous. (*See id.* ¶¶ 65–68, 105.) Plaintiff further asserts that the customs and practices of Defendant City allowed greater use of Tasers in quotidian, non-violent altercations than the official policies seem to suggest. (*See id.* ¶¶ 67–68, 105.)

## 2.    *Procedural History*

On August 1, 2007 and August 2, 2007 respectively, Ryan Wilson's father, Jack Wilson, and his mother, Wendy Wilson, filed separate lawsuits in Colorado state District Court regarding the incident.  (*See* J. Wilson's Compl.; Verified Notice of Removal, Ex. A-1 [W. Wilson's Compl.] [filed Aug. 31, 2007].)  Ms. Wilson claimed losses as next of kin and as the personal representative of Ryan Wilson, naming as defendants: Defendant City, the City of Lafayette Police Department, Police Chief Paul Schultz of the City of Lafayette Police Department, City of Lafayette Police Officer John Harris, Taser International, Inc., and five unnamed defendants. (*See* W. Wilson's Compl.)  Plaintiff, on the other hand, claimed losses individually and as personal representative of Ryan Wilson's estate, naming as defendants: Defendant City, Officer Harris, and Taser International, Inc.  (*See* J. Wilson's Compl.)  Both cases subsequently were removed to this court on federal question grounds.  (*See* Verified Notice of Removal [filed Aug. 31, 2007] [Ms. Wilson's Case]; Verified Notice of Removal [filed Oct. 24, 2007] [Plaintiff's Case].)

The cases proceeded independently at first, with the City of Lafayette filing separate motions to dismiss specific claims in each.  On September 24, 2007, Defendant City and the Lafayette Police Department jointly filed a motion to dismiss in Ms. Wilson's case.  (Def.'s Mot. to Dismiss [filed Sept. 24, 2007] [hereinafter "Mot. to Dismiss W. Wilson's Claims"].)  These defendants sought the dismissal of all claims against the Lafayette Police Department and a negligence claim against the City of Lafayette.  (*See* Mot. to Dismiss W. Wilson's Claims at 3–5.)  On November 5, 2008, Defendant City filed its motion to dismiss in Plaintiff's case

seeking to dismiss three of the five claims against it.  (*See* Def.'s Mot. to Dismiss [filed Nov. 5, 2007] [hereinafter "Mot. to Dismiss J. Wilson's Claims"].)  Soon after the motion to dismiss was filed in Plaintiff's case, several defendants filed an unopposed motion to consolidate Plaintiff's case with Ms. Wilson's case.  (*See* Defs.' Unopp. Mot. to Consolidate [filed Nov. 9, 2007].)  On November 13, 2007, this court granted the motion to consolidate.  (Order Consolidating Cases [filed Nov. 13, 2007] [combining cases under civil action number 07–CV–01844–EWN–KLM].)

On January 8, 2008, this court ruled on Defendant City and the Lafayette Police Department's motion to dismiss certain of Ms. Wilson's claims.  Upon recommendation of U.S. Magistrate Judge Kristen L. Mix, this court dismissed all claims against the Lafayette Police Department and a  negligence claim against Defendant City.  (Recommendation of U.S. Magistrate Judge [filed Dec. 7, 2007]; Order Accepting Magistrate Judge's Recommendation [filed Jan. 1, 2008].)

Defendant City's motion to dismiss certain of Plaintiff's claims remains outstanding and is the subject of this order.  Of the eight claims Plaintiff asserts in his complaint, five are directed at Defendant City.  In its motion to dismiss, Defendant City seeks to dismiss three of the five claims Plaintiff asserts against it: (1) a wrongful death claim with alleged respondeat superior liability in Defendant City; (2) a claim for violation of civil rights under section 1983 based in the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution; and (3) a claim for conspiracy to violate civil rights under section 1983.  On November 28, 2007, Plaintiff filed a response.  (Pl. Jack Wilson's Resp. to Def. City of Lafayette's Mot. to Dismiss [filed Nov. 28, 2007] [hereinafter "J. Wilson's Resp."].)  On

December 11, 2007, Defendant City replied. (Def.'s Reply in Supp. of Mot. to Dismiss [filed

Dec. 11, 2007].) This matter is fully briefed and ripe for review.

Plaintiff's claims against other defendants, including police officer John Harris, and

Taser Internationl, Inc., manufacturer of the instrument implicated in the death of Ryan Wilson,

although part of the case, are not the subject of the motion to dismiss and thus are not addressed

by this order. (*See* J. Wilson's Compl. ¶¶ 81–90, 100–09, 123–61.)

## ANALYSIS

### 1. *Legal Standard*

#### a. *Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Thus, the reviewing court

accepts all well-pleaded factual allegations in a complaint as true and construes them in the light

most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.

2007). This directive, however, does not encompass conclusory allegations asserted in a

complaint, which courts are free to disregard. *Hackwell v. United States*, 491 F.3d 1229, 1233

(10th Cir. 2007) (citing *Mitchell v. King*, 537 F.2d 385, 386 [10th Cir. 1976]).

Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), dismissal of a complaint was appropriate only when it appeared the plaintiff could prove "no set of facts" in support of the claims that would entitle him to relief. *See, e.g.*, *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994). In *Bell Atlantic*, the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. *Bell Atlantic*, however, did not mandate a substantial change in the average complaint. As the Court explained in a case decided soon after *Bell Atlantic*, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). The general rule survives and "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1964); *see Alvarado*, 493 F.3d at 1215 n.2 (stating that *Bell Atlantic* and *Erickson* suggest "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (stating that courts must take as true "all plausible, non-conclusory, and non-speculative" facts alleged in a plaintiff's complaint).

Although "plausibility" is not the clarion principle that some would like, courts have begun to wrestle with its parameters. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing other circuit courts that concur with its appraisal regarding the uncertainty created by *Bell Atlantic*). For example, the Tenth Circuit has noted that

the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Elsewhere, the Tenth Circuit noted that *Bell Atlantic* "seeks to find a middle ground between 'heightened fact pleading,' which is expressly rejected . . . and allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' which the Court stated 'will not do.'" *Robbins*, 519 F.3d at 1247 (quoting *Bell Atl. Corp.,* 127 S. Ct. at 1964, 1965, 1974) (citations omitted).

In interpreting the plausibility standard, courts are guided by two underlying principles. First, the standard serves to eliminate claims that, without additional allegations, have no reasonable prospect of success. *Id.* at 1248. Second, it works to notify defendants of the actual bases of the claims they face. *Id.* In the spirit of these purposes, courts have required greater specificity for the pleading of certain types of cases. *See, e.g.*, *Bell Atl. Corp.,* 127 S. Ct. at 1970 n.10 (seeking greater detail regarding time, place, and people allegedly involved in a conspiracy); *Robbins*, 519 F.3d at 1249–50 (requiring greater specificity for some complex section 1983 claims); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (requiring greater detail in pleading section 1983 conspiracy claims). The Tenth Circuit noted that amount of detail required to reach the threshold of plausibility and fair notice will depend on context, with more complex cases requiring more detail in pleading. *See Robbins*, 519 F.3d at 1248.

## 2. Evaluation of Claims

### a. Wrongful Death / Respondeat Superior

In his second claim, Plaintiff originally asserted a wrongful death tort claim against Defendant City based on Defendant City's position of authority and control over Officer Harris at the time of the incident. (J. Wilson's Compl. ¶¶ 91–99.) Defendant City seeks dismissal of this claim under Federal Rule of Civil Procedure 12(b)(1) asserting that the court lacks subject matter jurisdiction as a result Defendant City's sovereign immunity under the Colorado Government Immunity Act. (Mot. to Dismiss J. Wilson's Claims at 2–4 [citing COLO. REV. STAT. 24-10-106(1) *et seq.* (2007)].) Plaintiff concedes this point and voluntary abandons this claim. (*See* J. Wilson's Resp. at 3.) Therefore, Plaintiff's Second Claim is dismissed.

### b. Violation of Civil Rights Under Section 1983

In his third claim, Plaintiff alleges that "Officer Harris, acting under the color of state law, deprived decedent Ryan Wilson of his civil rights under [section]1983 by shooting him with a Taser and killing him." (J. Wilson's Compl. ¶ 107.) Specifically, Plaintiff asserts that Defendant City and Officer Harris deprived Ryan Wilson of his right to life under the Fifth and Fourteenth Amendments of the United States Constitution. (*Id.* ¶ 108.) Plaintiff's elaborations in his response to Defendant City's motion to dismiss make it clear that he is referring only to Ryan Wilson's due process rights under these amendments. (J. Wilson's Resp. at 5.) Defendant City seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) of Plaintiff's due process claim under section 1983 arguing that Plaintiff failed to state a claim. For reasons discussed below, Plaintiff has failed to properly plead this claim and therefore it is dismissed.

### i.    Source of Due Process Rights

Despite Plaintiff's references to it, the due process clause of the Fifth Amendment is inapposite in this case.  The Fifth Amendment's due process clause is applicable to the federal government only, not to the individual states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001); *Wardle v. Ute Indian Tribe*, 623 F.3d 670, 673 (10th Cir. 1980).  Plaintiff has not averred any facts implicating the federal government in this case, so the Fifth Amendment is inapplicable.

The due process clause of the Fourteenth Amendment on the other hand, with nearly identical language and judicial interpretation as the Fifth Amendment, *see, e.g.*, *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243 (5th Cir. 1982); *Earnest v. Willingham*, 406 F.2d 681, 684 (10th Cir. 1969), is applicable to the states and their municipal subdivisions.  *See Dusenbery*, 534 U.S. at 167.  Therefore, Plaintiff's due process claims, to the extent that they are proper at all, are properly brought under the Fourteenth Amendment alone.

### ii.    Claims Under Section 1983

Claims under section 1983 require that a plaintiff allege (1) he has been deprived him of a federal right and (2) that the person who deprived him of that right acted under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  For the purposes of section 1983, municipalities are deemed to be "persons" and may be held liable for violations of an individual's federal rights.  *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978).  However, because municipalities are entities, they act only through their personnel.  As a result, a municipality is only liable under section 1983 if there is an underlying constitutional

violation by such personnel. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 [1986]).

By definition, a valid section 1983 claim requires that there be an underlying federal right at issue. Section 1983 does not impart any rights in and of itself; rather it serves as a vehicle to protect and enforce rights granted elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Dixon v. City of Lawton*, 898 F.2d 1443, 1448 (10th Cir. 1990). Constitutional rights are properly vindicated by section 1983. *See Graham*, 490 U.S. at 394–95. However, in pleading a case, a plaintiff must take care to base his claim on the constitutional right that the facts show was violated.

Plaintiff argues that he has sufficiently pleaded a section 1983 due process claim because he asserted that (1) Ryan Wilson was deprived of his right to life by Officer Harris and Defendant City and (2) Officer Harris and Defendant City were acting under color of state law at the time. (J. Wilson's Resp. at 4.) While Plaintiff may have asserted both elements of a section 1983 claim, he has failed to cite the correct constitutional right as the basis of his claim.

Courts analyze claims alleging use of excessive force in the course of an arrest under the Fourth Amendment, not under due process. *Graham*, 490 U.S. at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). The Supreme Court unequivocally adopted this approach in *Graham*. 490 U.S. at 395 ("Today we make explicit . . . that all claims that law enforcement officers have used excessive force – deadly or not – in the

course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.").

The *Graham* doctrine has since become firmly ensconced in constitutional jurisprudence. *See, e.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51 (1993); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493–94 (10th Cir. 1990). In fact, even cases that attempt to distinguish *Graham* accept as settled that claims arising out of the context of an arrest must be analyzed exclusively under the Fourth Amendment's reasonableness standard. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Cassady v. Tackett*, 938 F.2d 693, 697 (6th Cir. 1991).

The one place courts have found play in this inflexible mandate is surrounding the question of whether there in fact has been a "seizure" of a person. *See* U.S. CONST. amend. IV ("The right of the people to be secure in persons, houses, papers, and effects, against unreasonable searches and *seizures* shall not be violated . . . .") (emphasis added). Where no seizure has occurred, the Fourth Amendment is inapplicable and due process may be the proper consideration. *Lewis*, 523 U.S. at 843.

A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989). Mere pursuit does not qualify as a seizure. *See Lewis*, 523 U.S. at 843–44 (citing *California v. Hodari D.*, 499 U.S. 621, 626 [1991]). However, "[w]henever an officer restrains the freedom of a person to walk away, he has seized that

person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (finding that fatally shooting suspect with a firearm qualified as a seizure under the Fourth Amendment).

For the purposes of the instant case, and pursuant to the case law cited above, Ryan Wilson was "seized" when Officer Harris deployed and engaged the Taser device. Indeed, Plaintiff alleges the constitutional violation occurred with the deployment of the Taser. (J. Wilson's Compl. ¶ 107 ["Officer Harris . . . deprived decedent Ryan Wilson of his civil rights under (section) 1983 *by shooting him with a Taser and killing him*." (emphasis added)].) Although Plaintiff does not invoke the phrase "excessive force," the act complained of is Officer Harris's seizing Ryan Wilson in the course of an arrest. Such an act falls plainly within the *Graham* doctrine. Consequently, Plaintiff's section 1983 claim must assert a violation of Ryan Wilson's Fourth Amendment right to be free from unreasonable searches and seizures rather than his Fourteenth Amendment right to due process of law.

Plaintiff attempts to distinguish his case from the *Graham* line of cases, by arguing that Defendant City's policies and customs independently violated Ryan Wilson's due process rights and thus should sustain this claim. (*See* J. Wilson's Resp. at 4–5.) Plaintiff's contentions fail for several reasons. First, this interpretation first surfaces in Plaintiff's response to Defendant City's motion to dismiss rather than his complaint, and even then is unconvincing. Second, even if this argument can be inferred from Plaintiff's complaint, as discussed above, a municipality will be held liable only for certain constitutional violations of its officers. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). As Plaintiff pleaded his case, the constitutional violation

occurred when Officer Harris seized Ryan Wilson.  (*See* J. Wilson's Compl. ¶ 107.)  It is this violation that arguably can be imputed to Defendant City.

Plaintiff fails to reveal how Defendant City's allegedly independent actions deprived Ryan Wilson of his right to life under the due process clause.  Plaintiff asserts only that "[t]he Lafayette Police Department's policies and/or customs encouraged its police officers to disregard its Use of Force Policies" and that "[t]he Lafayette Police Department knew, or should have known, that its Taser policy negligently posed an undue risk of harm to persons fleeing from the police for alleged non-violent offenses."  (J. Wilson's Compl. ¶¶ 105–06.)  These acts by themselves did not violate Ryan Wilson's constitutional rights.  It was not until Officer Harris pursued and seized Ryan Harris that these policies could have an impact on Ryan Wilson.  Finally, because the municipal behavior that Plaintiff separates out relates to the use of excessive force during an arrest, *Graham* requires that this claim be brought under the Fourth Amendment.

The court notes that the allegations in this claim are more apposite to Plaintiff's failure to train claim, which Plaintiff asserts against Defendant City elsewhere in his complaint.  (*See* J. Wilson's Compl. ¶¶ 110–22.)  Plaintiff apparently agrees, for in defending his due process claim he argues that it is not "based on allegations of excessive force, but rather a failure to train . . . ." (J. Wilson's Resp. at 5.)  Therefore, Plaintiff's repackaging of these facts into a separate due process claim is duplicative, unnecessary, and impermissible under Supreme Court's decision in *Graham.*  As such, it is dismissed.

### c.      *Conspiracy to Violate Civil Rights Under Section 1983*

In his fifth claim, Plaintiff alleges that "[d]efendants the City of Lafayette and Officer Harris, along with [Boulder] Task Force detectives and the officers from the Louisville and Lafayette Police Departments, all acting under the color of state law, conspired to chase, apprehend and arrest Ryan Wilson, using excessive force, for the non-violent offense of possessing and/or cultivating a small quantity of marijuana." (J. Wilson's Compl. ¶ 129.) Plaintiff further states that "Officer Harris, acting under the color of state law, deprived decedent Ryan Wilson of his civil rights under [section] 1983 by shooting him with a Taser and killing him." (*Id.* ¶ 130.) All of this was done, according to Plaintiff, in violation of "Ryan Wilson's constitutional right to life based upon the Fifth and Fourteenth Amendments of the United States Constitution." (*Id.* ¶ 131.) Although Plaintiff does not invoke by name the due process clauses of the Fifth and Fourteenth Amendments, it is clear from context that his claim intends to do so.

As noted above, the Fifth Amendment, as applicable to the federal government only, is not the proper source of rights in this case. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001); *Wardle v. Ute Indian Tribe*, 623 F.3d 670, 673 (10th Cir. 1980). Therefore, the court's analysis of Plaintiff's conspiracy claim may proceed under the Fourteenth Amendment only. *See Dusenbery*, 534 U.S. at 167.

Defendant City seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) of Plaintiff's section 1983 conspiracy claim arguing that Plaintiff has failed to state a claim for which relief may be granted. For reasons discussed below, the court finds that Plaintiff has failed to properly plead this claim and therefore it must be dismissed.

A conspiracy to violate one's civil rights is actionable under section 1983. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150–53 (1970); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). To sustain a conspiracy claim a plaintiff must adequately plead facts showing that: (1) a conspiracy existed, and (2) an actual deprivation of rights occurred. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995); *Dixon*, 898 F.2d at 1449. A plaintiff must sufficiently plead both elements, for "pleading and proof of one without the other will be insufficient." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990); *Dixon*, 898 F.2d at 1449.

As previously noted, courts require greater detail in pleading conspiracy claims in order to give defendants proper notice of the claims they face. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1970 n.10 (2007); *Tonkovich*, 159 F.3d at 533. In other words, in order for a conspiracy claim to move from the purgatory of "possibility" to the promised land of "plausibility," a plaintiff must offer allegations with some greater degree of detail than is required generally. Just how much detail is required, unfortunately, is not clear.

One indication comes from the Supreme Court in *Bell Atlantic*'s discussion of conspiracies in the antitrust context. According to the Court, a conspiracy claim must include "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp.*, 127 S. Ct. at 1965. The Court continues by stating that plausibility is achieved where there is "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* In one of the more direct statements on point, the Court notes the need for a plaintiff to identify the "specific time, place, or person involved in the alleged conspiracies." *Id.*

at 1970 n.10.  Although *Bell Atlantic* is an antitrust conspiracy case, its language regarding the pleading of conspiracies is instructive in the section 1983 conspiracy context.  *Cf. Patton v. West*, 276 F. App'x 756, 758 (10th Cir. 2008) (applying the conspiracy language from *Bell Atlantic* to a section 1985 conspiracy claim).

The Tenth Circuit developed more demanding requirements for pleading section 1983 conspiracy claims several years prior to *Bell Atlantic*, and there is every indication that *Bell Atlantic* did not disturb these requirements.  *See Raiser v. Kono*, 245 F. App'x 732, 736–37 (10th Cir. 2007); *Dillard-Crowe v. Aurora Loan Servs. LLC*, Nos. 07–CV–01987–WDM–CBS, 07–CV–02293–WDM–CBS, 2008 WL 3201226, at *8–9 (D. Colo. Aug. 5, 2008).  Conclusory allegations without factual support are inadequate as a matter of law.  *Clulow v. Oklahoma*, 700 F.2d 1291, 1303 (10th Cir. 1983).  For example, a plaintiff cannot state simply that a conspiracy exists or that certain parties "conspired."  *See Wilson v. Kurtz*, No. 07–CV–00625–WDM–MJW, 2008 WL 501438, at *8 (D. Colo. Feb. 20, 2008) (unpublished) (citing *Aniniba v. City of Aurora*, 994 F. Supp. 1293, 1298 [D. Colo. 1998]).  The standard as articulated elsewhere holds that "[p]leadings must specifically present facts tending to show agreement and concerted action." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 [10th Cir. 1983]); *see also Tonkovich*, 159 F.3d at 533.  The Tenth Circuit's discussion regarding pleadings in general also offers relevant guidance in this context.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (requiring plaintiffs to "make clear exactly *who* is alleged to have done *what* to *whom* . . .").  Therefore, in order to give a defendant proper notice of a conspiracy claim, a plaintiff is well-advised to include, at a minimum, some

indication as to who conspired, what they conspired about, where they conspired, when they conspired, and how they conspired.

Plaintiff argues that cases such as *Hunt* and *Clulow*, which call for greater detail in pleading conspiracy claims, may be distinguished from the instant case because those cases dealt with liability for private actors under section 1983. (*See* J. Wilson's Resp. at 6.) His argument fails, however, because the Tenth Circuit has required the same level of detail in cases such as *Tonkovich* which dealt only with state actors. *See Tonkovich*, 159 F.3d at 533 n.10; *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).

Somewhat in tension with its more stringent pleading requirements for conspiracy claims, the Tenth Circuit also counsels that "caution is advised in any pre-trial disposition of conspiracy allegations in civil rights actions." *Clulow*, 700 F.2d at 1303. Additionally, the discrete nature of a conspiracy claim — where "[d]irect evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances" — requires a somewhat more tolerant posture by courts. *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980). The Tenth Circuit seems to be counseling lower courts to grant some leeway to plaintiffs in describing the exact details of the alleged conspiracy, as long as the facts provided are sufficient to put a defendant on notice of the bounds of the alleged conspiracy. The court thus proceeds with great care in evaluating Plaintiff's conspiracy claim.

### i. Conspiracy Requirement

The Tenth Circuit has not defined "conspiracy" for the purposes of the first element of a section 1983 conspiracy claim. However, as abstracted from other law, a conspiracy essentially

consists of (1) two or more persons; (2) agreeing or acting in concert; (3) for an unlawful purpose or by unlawful means; and (4) committing an overt act toward the completion of the conspiracy's objective. *See Dillard-Crowe*, 2008 WL 3201226, at *8; *see also* Black's Law Dictionary 329 (8th ed. 2004) (defining conspiracy as "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and [in most states] action or conduct that furthers the agreement").

In order to satisfy the plausibility requirement from *Bell Atlantic* as well as the pleading requirements in the Tenth Circuit, Plaintiff should provide information regarding the who, what, where, when, and how of the alleged conspiracy. *See Bell Atl. Corp.*, 127 S. Ct. at 1970 n.10 (calling for "the specific time, place, or person involved in the alleged conspiracies"); *Robbins*, 519 F.3d at 1250 (requiring plaintiffs to "make clear exactly *who* is alleged to have done *what* to *whom* . . ."). These statements will guide the court in its analysis of Plaintiff's conspiracy claim and whether he properly averred facts showing that Defendant City entered into an agreement with another person to achieve an unlawful end or to achieve any end by unlawful means, and then acted overtly toward that end.

As noted above, Plaintiff's only statement that specifically details a conspiracy is the following: "Defendants the City of Lafayette and Officer Harris, along with [Boulder] Task Force detectives and the officers from the Louisville and Lafayette Police Departments . . . conspired to chase, apprehend and arrest Ryan Wilson, using excessive force, for the non-violent offense of possessing and/or cultivating a small quantity of marijuana." (J. Wilson's Compl. ¶ 129.) Plaintiff's first problem is that his allegation that Defendant City "conspired" is

impermissibly conclusory.  *See Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000); *Dillard-Crowe*, 2008 WL 3201226, at *8; *Wilson*, 2008 WL 501438, at *8.  Plaintiff instead must include some supporting facts showing through whom, where, when, and how Defendant City conspired.

Generally, a conspiracy claim must show an affirmative agreement by words or conduct between two or more persons.  An express agreement is not necessary, but the alleged conspirators must act in concert or demonstrate a general conspiratorial objective.  *See Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994); *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990).  Parallel action is not enough.  *See Bell Atl. Corp.*, 127 S. Ct. at 1966 ("Without more, parallel conduct does not suggest conspiracy . . . .").  There must be a "meeting of the minds" among the alleged conspirators.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152–58 (1970); *Hunt*, 17 F.3d at 1268.

Upon exhaustive review of the complaint, the court finds no proffered facts describing an express agreement by Defendant City to violate Ryan Wilson's rights.  The court's expiscation did reveal facts that one could *possibly* argue amount to Defendant City's approval of or acquiescence in the use of excessive force by its police officers.  Without the assistance or direction of Plaintiff, the court has assembled, from the 122 paragraphs loosely incorporated into Plaintiff's conspiracy claim by reference, all of the allegations that arguably support this position: (1) Defendant City "*knowingly allow*[*ed*] its police officers to wilfully and wantonly deploy X26 Tasers on citizens,"  (J. Wilson's Compl. ¶¶ 47, 50 [emphasis added]); (2) Defendant City "*exhibited gross negligence and deliberate indifference* to the planning and implementation

of policies and procedures for police training and supervision under which Officer Harris was trained," (*id.* ¶ 72 [emphasis added]); (3) "The Lafayette Police Department's policies unreasonably, in violation of Ryan Wilson's civil rights, *allow*[*ed*] for deployment of a Taser," (*id.* ¶¶ 67, 68 [emphasis added]); (4) "The Lafayette Police Department's policies and/or customs *encouraged* its police officers to disregard it Use of Force Policies," (*id.* ¶ 105 [emphasis added]); and (5) "The Lafayette Police Department *knew, or should have known*, that its Taser policy negligently posed an undue risk of harm to persons fleeing from the police for non-violent offenses," (*id.* ¶ 106 [emphasis added]).

It is unclear whether a party "knowingly allowed," displayed "gross negligence and deliberate indifference," "allowed," "encouraged," or "knew or should have known" will suffice to prove an agreement for conspiracy purposes. At the very least, such allegations fall short of *Bell Atlantic*'s and the Tenth Circuit's guidance calling for facts regarding through whom, when, or where this potential acquiescence came about thereby creating a conspiracy.

Plaintiff's half-hearted allegations that Defendant City agreed to arrest Ryan Wilson without probable cause barely approach possible — never mind plausible. (*See* J. Wilson's Resp. at 7 [quoting J. Wilson's Compl. ¶ 18].) Plaintiff offers no facts that even suggest any agreement by Defendant City regarding arrests without probable cause. Because Plaintiff does not develop this unlikely argument, neither will the court. The contention falls far short of plausibility and thus cannot stand as the basis for a conspiracy claim.

Plaintiff's conspiracy claim must also show that Defendant City agreed to participate in some unlawful activity. *See Patton v. West*, 276 F. App'x 756, 758 (10th Cir. 2008); *Fry v. Bd.*

*of County Comm'rs*, 7 F.3d 936, 943 (10th Cir. 1993). Plaintiff does not state what unlawful behavior he sees as underpinning his conspiracy claim. If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1974). The only argument based on Plaintiff's complaint that even approaches plausibility is an unlawful arrest through use of excessive force. (*See* J. Wilson's Compl. ¶ 129.) Again, Plaintiff's passing reference to *possible* violations regarding arrest without probable cause, as well as his brief references to the mishandling of evidence, do not reach the threshold of plausibility. (*See id.* ¶¶ 18, 22–24, 32–37.)

Plaintiff does allege facts showing that Officer Harris used excessive force during Ryan Wilson's arrest. (*See generally id.* ¶¶ 27–30, 40–44.) Ignoring for the moment Plaintiff's ill-advised mixing of constitutional doctrine — i.e. the conspiracy claim alleges only a deprivation of life in violation of due process and not a Fourth Amendment violation of the right to be free from unreasonable searches and seizures — the court considers this argument.

It is indeed unlawful to arrest individuals through the use of excessive force. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Graham v. Connor*, 490 U.S. 386, 394–97 (1989). Plaintiff pleads facts that arguably show that Officer Harris used excessive force. (*See id.* ¶¶ 27–30, 40–44.) Thus, arrest in violation of the Fourth Amendment may potentially serve as the unlawful activity underpinning a section 1983 conspiracy claim. *Cf. Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

Despite the fact that Plaintiff may have averred sufficient facts to demonstrate an unlawful arrest by Officer Harris, he fails to reach the threshold of plausibility with respect to pleading the rest of his conspiracy claim. His complaint's greatest shortcoming is that it forced the court to undertake such an elaborate exercise to decipher it. It is an exercise that is in excess of what *Bell Atlantic*, *Robbins*, and *Tonkovich* require of a defendant facing a conspiracy charge. Giving a defendant proper notice of the claims it faces requires more than the unorganized recitation of facts that could possibly lead one to conjure up a claim on Plaintiff's behalf. In the instant case, Plaintiff presented the court and Defendant City with conclusory allegations and haphazardly arranged facts with little indication as to how the facts fit into a cognizable conspiracy claim.

Although the court is required to make all reasonable inferences from the facts in Plaintiff's favor, the court need not sift through Plaintiff's entire complaint in search of a coherent theory for his conspiracy claim. *See Tonkovich*, 159 F.3d at 533–34. More critically, Plaintiff requires Defendant City to go through the same speculative exercise in order to construct an argument to which it must respond. As cases such as *Bell Atlantic*, *Robbins*, and *Tonkovich* make clear, a plaintiff has the responsibility to present his case with enough clarity to put a defendant on notice of the claims which it faces and to which it must respond. This, in turn, allows for early dismissal where appropriate, avoiding the expense and effort of discovery. *See Bell Atl. Corp.*, 127 S. Ct. at 1967; *Robbins*, 519 F.3d at 1248. The court has made every effort to entertain all reasonable inferences regarding Plaintiff's contentions, but here the averments simply fail in detail and theory. Therefore, Plaintiff has failed to meet the first

requirement for a conspiracy claim under section 1983, and has not properly pleaded an actual plausible conspiracy entered into by Defendant City.

### ii.     *Actual Deprivation of Rights Requirement*

Plaintiff's shortcomings in pleading an actual conspiracy are overshadowed by his failure to plead a deprivation of a right. Plaintiff repeatedly and stubbornly insists that his conspiracy claim rests on a deprivation of Ryan Wilson's right to life under the Fifth and Fourteenth Amendments of the Constitution. (*See* J. Wilson's Compl. ¶ 131; J. Wilson's Resp. at 7.) His recalcitrance persists even after Defendant City admonishes him that *Graham v. Connor* dictates that Plaintiff's conspiracy claim, as he has pleaded it, must be brought under the Fourth Amendment, not due process. (*See* Mot. to Dismiss J. Wilson's Claims at 5–7.) Plaintiff's pleadings only discuss use of excessive force during an arrest as the possible unlawfulness underlying the alleged conspiracy. Since Plaintiff does not specifically invoke the Fourth Amendment, even after being informed of his folly, the court accepts that Plaintiff means to argue only a conspiracy to deprive Ryan Wilson of his right to life under the due process clause.

Plaintiff's due process claim is problematic because he once again faces the insurmountable hurdle of the *Graham* doctrine. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). As Plaintiff describes it, Ryan Wilson's civil rights were violated when the various actors including Defendant City "conspired to chase, apprehend and

arrest Ryan Wilson, *using excessive force . . . .*" (J. Wilson's Compl. ¶ 129 [emphasis added].)

By its very words this is a Fourth Amendment claim regarding the use of excessive force during an arrest. Plaintiff also avers that "Officer Harris, acting under the color of state law, deprived decedent Ryan Wilson of his civil rights under [section] 1983 *by shooting him with a Taser and killing him.*" (*Id.* ¶ 130 [emphasis added].) This assertion, detailing the arrest or seizure of Ryan Wilson, also implicates the Fourth Amendment. Therefore, *Graham* requires that this claim be litigated under the Fourth Amendment and not under due process as Plaintiff attempts to do.

The court could infer from the excessive force language in Plaintiff's complaint cited above that the conspiracy to which he alludes was in fact a conspiracy to violate Ryan Wilson's Fourth Amendment rights in addition to his Fourteenth Amendment due process rights. However, as far as the court can tell, any language seeming to invoke the Fourth Amendment was intended solely to prove unlawful behavior in support of a due process claim. Plaintiff failed to mention the Fourth Amendment as a basis for his claim either in his complaint or in subsequent filings, and instead repeatedly insists that the claim was based in due process. (*See* J. Wilson's Resp. At 6–7); *cf. Dixon v. City of Lawton*, 898 F.2d 1443, 1448 (10th Cir. 1990) (rejecting argument to base liability on constitutional amendment not mentioned in plaintiff's complaint). The directive to make all reasonable inferences in favor of Plaintiff does not require the court to reformulate his claims to comport with easily discovered precedent. Such a deficiency in pleading the second element of his section 1983 conspiracy claim — the actual deprivation of a right — further impels the court to dismiss Plaintiff's conspiracy claim.

The court is reassured in its disposition by the fact that Plaintiff asserts, against Defendant City, non-conspiracy section 1983 actions for violation of Ryan Wilson's Fourth Amendment rights.  (*See* J. Wilson's Compl. ¶¶ 110–122, 133–144.)  Generally, a finding of conspiracy under section 1983 does not provide for additional damages.  *See Libbra v. City of Litchfield*, 893 F. Supp. 1370, 1375 (C.D. Ill. 1995).   Rather, it serves to make liable parties that otherwise would not be because they did not personally participate in the offending action.  *Id.* However, municipalities can be liable for the actions of their employees directly under section 1983.  *See  Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978).  Indeed, Plaintiff's due process claim appears to be more properly pleaded toward direct liability under a failure to train claim or an excessive force claim rather than a conspiracy claim.  Therefore, since Plaintiff's conspiracy is wanting in factual specificity and on issues of law as to Defendant City, and he maintains more tenable avenues for relief, the court has little compunction in dismissing the conspiracy claim.

### 3.    *Attorneys Fees*

Defendant originally moved for costs and attorneys fees associated Plaintiff's wrongful death tort claim.  (*See* Mot. to Dismiss J. Wilson's Claims at 8).  Plaintiff represents that Defendant City has agreed not to seek attorneys fees associated with this claim.  (*See* J. Wilson's Resp. at 3.)  Defendant City did not dispute this representation in its reply.  Therefore, I deny Defendant City its attorneys fees associated with litigating Plaintiff's wrongful death tort claim.

### 4.    *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.     DEFENDANT's motion (#8) is GRANTED.

2.     Any Final Judgment entered upon resolution of all claims against all parties shall

       include judgment in favor of Defendant City and against Plaintiff, dismissing

       Plaintiff's wrongful death claim (second claim), section 1983 due process claim

       (third claim), and section 1983 conspiracy claim (fifth claim) with prejudice.

Dated this 10th day of September, 2008

                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        Chief United States District Judge