IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 07-cv-01844-PAB-KLM
(*consolidated with 07-cv-02248-PAB-BNB*)

WENDY WILSON, as an individual and as the next of kin and personal representative of Ryan Wilson, deceased, et al.,

    Plaintiffs,

v.

TASER INTERNATIONAL, INC.,

    Defendant.

___

**ORDER**
___

This case arises out of the death of Ryan Wilson after a police pursuit. The pursuit ended when a police officer shot Mr. Wilson with a TASER and, shortly thereafter, Mr. Wilson died. In defense of the claims against it, defendant Taser International, Inc. ("Taser") seeks to introduce expert testimony by Jeffrey D. Ho, M.D. Plaintiffs ask the Court to exclude that testimony pursuant to Federal Rule of Evidence 702 [Docket No. 251]. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**

On August 4, 2006, Ryan Wilson was approached by two undercover officers from the Boulder County Drug Task Force in a field in Louisville, Colorado. Upon realizing that he was speaking to police officers, Mr. Wilson fled. The officers chased him for approximately three-quarters of a mile across rough terrain and multiple fences.

Another police officer arrived by police vehicle during the pursuit and identified Mr. Wilson from a description he received from the other officers. He also began pursuing Mr. Wilson by foot. Mr. Wilson then approached another fence. There is a dispute regarding whether Mr. Wilson stopped, turned to face the officer, and turned to flee again or whether Mr. Wilson simply slowed down as he approached the fence. In any event, at this stage of the encounter, Officer Harris discharged an X26 model TASER device at Mr. Wilson.

When the trigger on a TASER is pressed, two probes connected by wires to the device are fired. If both probes lodge in the skin or clothing of the person targeted, an electrical current will flow between the two probes. This current will override the target's central nervous system and cause loss of muscle control. There is no dispute that one of the TASER probes hit and secured itself to Mr. Wilson's left side. While there is some dispute regarding whether and where the second probe hit, there is some evidence that it may have struck Mr. Wilson in the back of the head or neck and that an electrical current flowed between the two probes. In any case, at the same time Officer Harris shot Mr. Wilson with the TASER, Mr. Wilson immediately fell to the ground, face down, and was unresponsive to Officer Harris' commands. Upon reaching Mr. Wilson, the pursuing officers turned him over and detected breathing and a pulse. Between ten seconds and a minute later, however, Mr. Wilson stopped breathing and the officers could no longer detect a pulse. The officers' attempts to resuscitate him failed. It was later discovered that Mr. Wilson suffered from hypoplastic coronary artery disease and myocardial bridging near his heart.

## II. FEDERAL RULE OF EVIDENCE 702

Federal Rule of Evidence 702 provides that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient, that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a

particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While defendant, as the proponent of the challenged testimony, has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; Taser need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

4

## III. DISCUSSION

Dr. Ho offers the following three conclusions in his expert report:

1. "[I]t is my opinion, to a reasonable degree of medical certainty, that the use of the TASER ECD did not cause or contribute to Mr. Wilson's death."

2. "It is also my opinion to a high degree of medical certainty that Mr. Wilson had a congenital, profound cardiac abnormality independent of ECD application that put him at greatly elevated risk for sudden death during exertion and was responsible for his demise."

3. "[B]ased on the available medical evidence, postmortem photographs and the autopsy report, it cannot be determined to a reasonable degree of medical certainty that Mr. Wilson actually experienced any electrical discharge from the ECD. This opinion is further reinforced by the analysis and report from Mr. Andrew Hinz."

Docket No. 251-1 at 27.

In regard to the first opinion, plaintiffs' only objection appears to be that Dr. Ho's testimony will be duplicative of other opinions proffered by Taser's experts and, therefore, is cumulative. *See* Docket No. 251 at 4 ("Dr. Ho . . . has previously been precluded from giving duplicative opinion testimony which is cumulative to that proposed by Dr. Vincent Di Maio, who is also a retained expert in this case." (citing *Rios v. City of San Jose*, No. C 06-7036 RS, 2008 WL 4532559, at *2 (N.D. Cal. Oct. 9, 2008)). The Court finds this objection to be premature. If, at the time Dr. Ho's testimony is offered at trial, plaintiffs believe his opinion to be sufficiently duplicative to warrant its exclusion, they may reassert their objection. *See Rios*, 2008 WL 4532559, at *2 (denying the motion to exclude Dr. Ho's testimony "to the extent that Dr. Ho will be permitted to testify regarding the medical impact of taser use but will be precluded from rendering duplicative opinion testimony from defendants' other medical experts").

5

As for the second opinion, plaintiff contends that Dr. Ho

> does not identify what constitutes a hypoplastic coronary artery. He cites no research or data to support his opinion that Ryan Wilson had a hypoplastic coronary artery. He seems to be relying entirely on the opinions of the coroner, Dr. Lear-Kaul. He does not identify an independent basis for agreeing with Dr. Lear-Kaul's findings on this particular issue.

Docket No. 251 at 6 (citation omitted). The Court, however, is satisfied that Dr. Ho may rely upon the observations and measurements reported by Dr. Lear-Kaul to both reach the conclusion that Mr. Wilson suffered from a hypoplastic coronary artery and to offer his professional opinion regarding the risks such a condition poses. As Taser points out, Dr. Lear-Kaul concluded that Ryan Wilson had a hypoplastic coronary artery. Dr. Lear-Kaul explained the basis for reaching that conclusion, and Dr. Ho, as a physician, may rely upon that finding. *Cf.* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. . . ."). Indeed, Dr. Lear-Kaul's diagnosis was also adopted by plaintiffs' medical expert, Dr. David S. Rosenbaum.

More importantly, the diagnosis by Dr. Lear-Kaul is simply the fact upon which Dr. Ho rests his opinion that such a condition placed Ryan Wilson at an increased risk of sudden death. *See* Docket No. 251-1 at 16. Plaintiffs have not called into question the adequacy of a hypoplastic coronary artery diagnosis as a basis to render such an opinion. Nor have they questioned Dr. Ho's qualifications to offer the opinion.

Therefore, the Court is satisfied that, in regard to the second proffered opinion, Dr. Ho "has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Turning to Dr. Ho's third proffered opinion, it is based upon "available medical evidence, postmortem photographs and the autopsy report," as well as the opinion of Mr. Andrew Hinz. The Court has already excluded Mr. Hinz's proffered testimony as unreliable. In regard to the other data upon which Dr. Ho bases his opinion, plaintiffs argue that "Dr. Ho does not explain what kind of mark would be indicative of such a Taser application." Docket No. 251 at 7 ("[Nor] does Dr. Ho explain what kind of evidence in the postmortem photos and autopsy report, if any, would have been indicative in his opinion to Ryan Wilson actually experiencing an electrical discharge."). Dr. Ho, however, does indicate in his report that, in the event of delivery of an electric discharge, he would have expected there to have been "evident surrounding erythema or electrocautery." Docket No. 251-1 at 9. Furthermore, Dr. Ho's opinion is not definitive, but rather is phrased in terms of there being a lack of evidence permitting him to reach the conclusion to a reasonable degree of medical certainty that an electrical charge was delivered. The Court will permit Dr. Ho to testify regarding the type of mark he would have expected would be left after a successful electrical charge.

Plaintiffs also challenge the reliability of aspects of Dr. Ho's report that are not specifically captured by his three identified conclusions. For instance, plaintiffs argue that Dr. Ho is not qualified to describe how a TASER functions because he lacks

7

knowledge, experience, and training in electrical issues. *See* Docket No. 251 at 5. Plaintiffs do not address Dr. Ho's experience, however, consulting with municipalities and defendant regarding the human effects of TASER devices, *see* Docket No. 251-1 at 33, or his publications on the subject. *See* Docket No. 251-1 at 35-37. In his report, Dr. Ho refers to such knowledge and experience as supporting his opinions. *See* Docket No. 251-1 at 12 ("I have significant experience in dealing specifically with many of the ECD electrical principals in my realm of human research and medicine."). The Court is satisfied that Dr. Ho has studied, and applied his knowledge and experience regarding, how a TASER functions and may offer testimony in that regard in support of his opinions regarding causation in this case.

Finally, the Court notes that, in the course of describing the bases for his proffered opinions, Dr. Ho offered his opinion regarding the lack of reliability of reliance on temporal proximity in reaching a conclusion regarding causation. Plaintiffs contend that this aspect of his report is not based on scientific or technical knowledge and will not assist the jury. At present, it is not clear that this constitutes an opinion that Dr. Ho intends to offer at trial. Therefore, the Court declines to resolve plaintiff's objection at this time. The Court takes the opportunity to note, however, that Dr. Ho's recitation of the logical fallacy *post hoc, ergo propter hoc* is not a proposition in any serious dispute. With that said, nothing in Dr. Ho's report questions the fact that sequence and temporal proximity may be considered, among other probative evidence, in analyzing potential causes.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiffs' Rule 702 motion to preclude the testimony of Jeffrey D. Ho, M.D. [Docket No. 251] is DENIED.

DATED September 15, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge