IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Case No. 07-cv-01844-PAB-KLM
    (*consolidated with 07-cv-02248-PAB-BNB*)

WENDY WILSON, as an individual and as the next of kin and personal representative of Ryan Wilson, deceased, et al.,

    Plaintiffs,

v.

TASER INTERNATIONAL, INC.,

    Defendant.

_____

# ORDER
_____

This case arises out of the death of Ryan Wilson after a police pursuit. The pursuit ended when a police officer shot Mr. Wilson with a TASER and, shortly thereafter, Mr. Wilson died. In defense of the claims against it, defendant Taser International, Inc. ("Taser") seeks to introduce expert testimony by John G. Peters, Jr., Ph.D. Plaintiffs ask the Court to exclude that testimony pursuant to Federal Rule of Evidence 702 [Docket No. 254]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

On August 4, 2006, two undercover officers from the Boulder County Drug Task Force approached Ryan Wilson in a field in Louisville, Colorado. Upon realizing that he was speaking to police officers, Mr. Wilson fled. The officers chased him for approximately three-quarters of a mile across rough terrain and multiple fences. Officer

John Harris arrived by police vehicle during the pursuit and quickly identified Mr. Wilson from a description he received from the other officers. He also began pursuing Mr. Wilson by foot. Mr. Wilson then approached another fence. There is a dispute regarding Mr. Wilson's precise movements at this point, i.e., whether Mr. Wilson stopped, turned to face Officer Harris, and turned to flee again or whether Mr. Wilson simply slowed down as he approached the fence. In any event, at this stage of the encounter, Officer Harris discharged an X26 model TASER device at Mr. Wilson.

When the trigger on a TASER is pressed, the TASER discharges two probes connected to the device by wires. If both probes lodge in the skin or clothing of the person targeted, an electrical current flows between the two probes. This current will override the target's central nervous system and cause a loss of muscle control. There is no dispute that one of the TASER probes hit and secured itself to Mr. Wilson's left side. Taser, however, contends that there is no evidence that the second probe made contact with Mr. Wilson, thus permitting an electrical current to pass between the two probes. In any case, at the same time Officer Harris shot Mr. Wilson with the TASER, Mr. Wilson immediately fell to the ground, face down, and was unresponsive to Officer Harris' commands.

## II. FEDERAL RULE OF EVIDENCE 702

Federal Rule of Evidence 702 provides that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

2

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient, that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at

3

593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While defendant, as the proponent of the challenged testimony, has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; Taser need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

## III. DISCUSSION

Dr. Peters is a "former Pennsylvania police officer, deputy sheriff, and Massachusetts law enforcement administrator," who has overseen training and written training materials for law enforcement personnel. *See* Docket No. 254-1 at 3-4. He also has extensive experience in law enforcement training, with particular emphasis on use of force techniques and devices. *See* Docket No. 254-1 at 3. Furthermore, he has

written about "law enforcement policy and procedures, use-of-force, excited delirium, sudden in-death custody death, and related topics." See Docket No. 254-1 at 4.

In his expert report in this case, Dr. Peters identifies thirteen separate opinions, categorizing them as "Pre-Incident," "Incident," and "Post-Incident." See Docket No. 254-1.

### A. Pre-Incident Opinions

Dr. Peters' "Pre-Incident" opinions are as follows:

1. The training resources offered by TASER in 2006 met or exceeded recognized law enforcement educational and/or training standards.
2. Lafayette TASER-trained [electronic control device ("ECD")] officers are educated use-of-force users.
3. TASER warnings met or exceeded other law enforcement manufacturer product warnings about its products to the purchasers and users of its products.
4. TASER does not set policy for agencies regarding TASER ECD use, deployment, training and/or policies or procedures.
5. TASER ECDs are designed to protect.
6. The City of Lafayette, Colorado is a knowledgeable use-of-force user, purchaser, and educated consumer.

Docket No. 254-1 at 4-19.

While offering a generalized challenge to Dr. Peters' qualifications to offer certain other opinions, plaintiffs do not offer any objections directed at Opinion #1. The Court finds that Dr. Peters possesses the requisite qualifications to offer that opinion and cites adequate bases for reaching it. Whether that particular opinion will ultimately be relevant to an issue at trial is yet to be seen. At present, however, the Court is satisfied that the opinion satisfies the requirements of Rule 702.

The Court will not, however, permit Dr. Peters to offer Opinions #2 and #6. These opinions are not "based upon sufficient facts or data." Fed R. Evid. 702. In

5

support of these opinions, Dr. Peters cites no facts specific to the City of Lafayette and its police officers, instead simply asserting that he is familiar with "law enforcement training" in Colorado. See Docket No. 254-1 at 6. He does not explain how he extrapolates from the entire state, or even the specific counties in which he has experience, see Docket No. 254-1 at 6, to the City of Lafayette. Nor does he articulate the basis for his apparent assumption that, because other police departments with which he is familiar have certain knowledge and training, the Lafayette Police Department does as well. If he had compiled sufficient facts, Dr. Peters' experience and education would likely be sufficient to qualify him to interpret and offer an opinion based on those facts. Such qualifications, however, may not serve to replace adequate factual underpinnings. The Court is not required to simply take his word for it. See Fed. R. Evid. 702 advisory cmt. notes ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

In the section of his report supporting Opinion #3, Dr. Peters includes certain opinions that the Court must also exclude. For instance, he recites the legal standard in duty to warn cases. This goes beyond his area of expertise and treads on the purview of the Court. With that said, Dr. Peters' experience does permit him to offer his opinion on whether the TASER warning is written and presented in a manner that is consistent with the practice in the field. To that extent, Dr. Peters' discussion of the

warnings supplied with other "use-of-force products" is admissible.  He may not, however, use that testimony as a means to testify that TASERs cannot cause certain injuries.  The specific harm at issue in this case, and whether it could be caused by a TASER, are beyond Dr. Peters' knowledge and experience.  Defendant's contention that Dr. Peters' extensive exposure to the use of TASERs qualifies him to offer opinions on the physiological risks posed by a TASER discharge is unpersuasive.  Taser does not even attempt to explain how that experience specifically relates to such an opinion.

Turning to Opinion #4, the Court finds that it must be excluded.  Taser argues that the "purpose of Dr. Peters' testimony is to establish that TASER has not taken on the responsibility of developing policies and directives governing the use of TASER ECDs for law enforcement agencies and, as a result, it is the agencies' duty to do so." Docket No. 270 at 10.  Taser fails to explain how Dr. Peters' "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702, is relevant to this fact.  Nor does Taser contend that this "fact" is in dispute or that the jury would need assistance in understanding it in any event.  And, to the extent Dr. Peters seeks to testify that "law enforcement agencies have a duty to develop such policies and directives to reasonably guide user discretion and to also provide reasonable guidance about the electronic device," Docket No. 254-1 at 18, he again ventures into the realm of offering legal opinions.  Moreover, he provides no basis for this opinion regarding duties.  Rather, he simply asserts that "reasonable" government officials "know" that it is their duty to set TASER use policy.  The basis for this assertion and how he reached it are not in the record before the Court.  His fourth proffered opinion, therefore, will be excluded.

7

In support of Opinion #5, Dr. Peters asserts that

> TASER's ECDs are designed specifically to protect the safety of law enforcement officers performing their official duties in arresting or otherwise taking into custody, capturing, or controlling unpredictable, resisting, struggling, assaultive, and/or potentially violent criminal suspects or those in need of being controlled. Although many critics argue that the electrical shock from a TASER ECD is dangerous, the electrical shock cannot be removed from the ECD because it would have a serious impact on the utility of the device. In my professional opinion, TASER ECDs are the results of the best science and art for this type of product.

Docket No. 254-1 at 18. In regard to Dr. Peters' opinion regarding the purpose of the TASER design, it is not clear to the Court at this stage whether this proposition is in dispute. Therefore, the Court declines the opportunity to resolve, at this stage of the case, whether it is admissible expert testimony.[1] As for his opinion regarding the feasibility of removing the "electrical shock," Dr. Peters cites nothing to support that opinion. Finally, Dr. Peters refers to no methodology employed to reach the conclusion that TASER ECDs reflect the "best science and art for this type of product." Therefore, he will not be permitted to offer these opinions.

## B. Incident Opinions

The next group of opinions offered by Dr. Peters, described as "Incident" opinions, consists of the following:

7. TASER devices are intended to provide a viable force option.
8. TASER had no control over the actions taken by Officer Harris toward Mr. Wilson.
9. TASER ECD correlation and/or association with Mr. Wilson's death do not equal causation.

---

[1] With that said, the Court notes that Dr. Peters does not cite anything in support of his opinion. Therefore, it is not clear whether underlying facts support the opinion or whether it is an undisputed assertion that can stand on its own without the need for expert testimony.

Docket No. 254-1 at 19-21.

In regard to Opinion #7, Dr. Peters asserts that

> TASER's electronic control products are designed specifically to protect the safety of law enforcement officers performing their official duties in arresting or otherwise taking into custody, capturing, or controlling unpredictable, resisting, struggling, assaultive, and/or potentially violent criminal suspects or those in need of being captured, controlled, restrained, and/or have their assaultive behaviors thwarted.

Docket No. 254-1 at 19-20. Dr. Peters made this precise point in support of Opinion #5. For the same reasons offered above, the Court declines the opportunity to resolve, at this stage of the case, whether it is admissible expert testimony.

Opinion #8, on its face, appears to be a fact not in dispute and with which the jury will not need assistance from an expert. Dr. Peters notes that "[n]o representative of TASER was at the scene." Docket No. 254-1 at 20. The Court is aware of no assertion to the contrary or of any legal theory proffered by plaintiffs that relies on the personal presence and involvement of a Taser representative. Nor is it clear how reaching the conclusion that Taser did not control Officer Harris' actions from the fact that no Taser representative was on the scene constitutes an expert opinion. The other assertions offered in support of Opinion #8, to the extent necessary, are addressed in the context of opinions to which they are relevant.[2]

Although Opinion #9 addresses the principles of correlation and association, the essential opinion expressed in that portion of Dr. Peters' report is that there is no

---

[2] For example, Dr. Peters notes that TASER "products have been used to save lives, rescue hostages, and reduce injures [sic] to law enforcement officers, suspects, and others." Docket No. 254-1 at 20. The Court does not see how this is relevant to his opinion that Taser did not control the actions of Officer Harris.

9

"scientific proof that [the TASER] caused [Ryan Wilson's] collapse and ultimate death." Docket No. 254-1 at 20. Dr. Peters does not cite, and Taser fails to identify, any relevant experience or education that would permit him to offer an opinion on medical causation. *See Wilson v. Taser Int'l, Inc.*, No. 4:06-CV-0179-HLM, 2007 WL 4794112, at *5 (N.D. Ga. Aug. 29, 2007) ("[A]lthough Dr. [John G.] Peters may be familiar with the scientific method and with conducting scientific research, Defendant has not shown that Dr. Peters is qualified to testify as to orthopedics or medical causation. Consequently, Dr. Peters may not offer testimony concerning whether the TASER exposure caused Plaintiff David Wilson's injury."). Dr. Peters further opines that "there is scientific proof that the TASER ECD failed to produce enough energy through the wires and into the probes to shock Mr. Wilson." Docket No. 254-1 at 20-21. The only support he cites for that opinion is the proffered expert report of Mr. Andrew Hinz. The Court, however, has excluded Mr. Hinz's testimony for failing to meet the requirements of Rule 702. *See* Docket No. 322. Therefore, Dr. Peters will not be permitted to offer the opinion in his stead.

### C. Post-Incident Opinions

Dr. Peters' "Post-Incident" opinions are that

> 10. Scientific research has been used in the majority of research studies regarding TASER ECDs.
> 11. Newspaper, magazine, tabloid, and/or electronic articles, radio, television, and electronic news reports, editorials, memos, and other non-scientific reports, and opinions about medicine, health issues, causes of death, electricity, TASER ECDs, TASER, and law enforcement tactics and procedures are not bases for, or proof of, causation.
> 12. Statements such as "further research is needed" appearing in peer-reviewed journal articles or research reports are consistent with scientific research article and report format and do not imply that the research findings are flawed and/or unreliable.

10

13. TASER warnings and instructions advised end users to take photographs of injuries and to seek professional medical treatment.

Docket No. 254-1 at 21-27.

Opinion #10 strikes the Court as either an uncontested tautology or as a potential rebuttal argument. The Court will not permit Dr. Peters to offer this opinion as a freestanding, non-rebuttal opinion, as its relevance to an issue that will be presented to the jury is unclear. In regard to Opinion #11, the Court fails to see how it will assist the jury to have Dr. Peters essentially offer the opinion that people should not believe everything they read or hear.

Opinion #12 is a general proposition that potentially applies to research reports that Dr. Peters lacks the qualifications to critique. Moreover, defendant has failed to articulate the relevance of this opinion or explain how such an opinion might assist the jury. It will therefore be excluded. Opinion #13 is a factual statement that does not appear to require any expert testimony for the jury to understand. It is, however, a fact that may be relevant to Dr. Peters' testimony regarding training and warnings. Therefore, and to that extent, Opinion #13 will not be excluded.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to exclude the testimony of Dr. John G. Peters, Jr. [Docket No. 254] is GRANTED in part and DENIED in part.

DATED September 21, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge